RECEIVED
OCT 3 1 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY:_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| DONALD PLUNK, SR, and DONALD PLUNK, JR | CIVIL ACTION: 12-2680 |
| VERSUS | JUDGE DONALD E. WALTER |
| LKQ BIRMINGHAM, INC. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court are cross-motions for summary judgment in the above captioned matter with respect to whether Illinois or Louisiana law should apply to an asset purchase agreement involving a restrictive covenants provision. For the reasons assigned herein, the motion for summary judgment filed by LKQ Birmingham, Inc. ("LKQ") [Doc. 24] is hereby **DENIED**. The motion for summary judgment filed by Donald Plunk, Sr. and Donald Plunk, Jr., [Doc. 25] is hereby **GRANTED**.

## BACKGROUND INFORMATION

In June 2010, Donald Plunk, Sr. and Donald Plunk, Jr. (the "Plunks") and LKQ executed an Asset Purchase Agreement (the "Agreement"), whereby the Plunks (and another business partner) sold several businesses and assets to LKQ for the approximate sum of $3.8 million. The Agreement, a document in excess of twenty pages, contained a clause that, upon closing, required LKQ to employ the Plunks on an at-will basis. [Doc. 1, Exh. A]. The Agreement also contained a "Restrictive Covenants" provision whereby the Plunks essentially agreed not to compete against LKQ for a period of five years from the date of the sale. *Id.* at ¶ 10.1. The Restrictive Covenants provision also included a blanket prohibition that prevented the Plunks from competing against LKQ

1

"*anywhere within the United States...*" for the five year period. *Id.* (emphasis added).

The parties determined that the Agreement would be "governed by and construed in accordance with the laws of the State of Illinois . . ." *Id.* at ¶ 11.9. Finally, the Agreement contained reciprocal forum selection clauses which provided that "any action" to "enforce" a party's respective "rights" under the Agreement, or related agreements, would be brought either in "the United States District Court for the Northern District of Illinois (Eastern Division) or in the Circuit Court of Cook County, Illinois" (if brought by the Plunks), or in the "United States District Court for the Western District of Louisiana, Monroe Division or in the **Ouachita** Parish, Louisiana Court" (if initiated by LKQ). *Id.* at ¶¶ 11.10.1-5 (emphasis in original).

Following the sale, and as provided in the Agreement, LKQ retained the Plunks as at-will employees. On September 12, 2012, however, LKQ abruptly terminated the Plunks' employment. [Doc. 1 at ¶ 4]. Two days later, the Plunks filed a Petition for Declaratory Judgment against LKQ in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana. The Plunks contend that because the Agreement was an "employment contract or agreement," the choice of law and forum selection clauses are null and void under Louisiana law as the Plunks did not ratify the clauses "after the occurrence of the incident" which gave rise to the civil action. [Doc. 1 at ¶ 9 (citing La. R.S. § 23:921)].

Applying Louisiana law to the Agreement, the Plunks contend that the Restrictive Covenants are unenforceable because, inter alia, they exceed the two year legal maximum. *Id.* at ¶ 12. Thus, the Plunks seek a judgment declaring the restrictive covenant set forth in paragraph 10.1.1 of the Agreement null and void. *Id.* at ¶ 14. Plaintiffs also seek an award of reasonable attorney fees incurred by them to prosecute this action. *Id.*

2

On October 12, 2012, LKQ removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. [Doc. 1]. On July 15, 2013, LKQ filed a motion for summary judgment [Doc. 24] now before this Court; the Plunks oppose this motion. [Doc. 28]. On July 15, 2013, the Plunks also filed a motion for summary judgment now before this Court; LKQ opposes this motion. [Doc. 29].

## LAW AND ANALYSIS

### 1. Standard of Law

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating " 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue

3

of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## 2. Which State Law Applies: Illinois or Louisiana?

The Agreement states that the Agreement is "governed by and construed in accordance with the laws of the State of Illinois . . . " [Doc. 1, Exh. A at ¶ 11.9]. The Plunks argue that Louisiana law should control this case. Thus, the threshold issue in this case is which state law applies: Illinois or Louisiana? Although the contract states that Illinois law should apply, this Court, exercising diversity jurisdiction and applying the conflicts of law principles of Louisiana, holds that Louisiana law applies.[1]

To determine which state law applies, the Court first looks to Louisiana Civil Code Article 3540, which provides:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

Louisiana Civil Code Article 3537 states, as a general rule, that an issue of conventional obligations is "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." Article 3537 also states:

---

[1] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (a court exercising diversity jurisdiction must apply the conflict principles of the state in which it is sitting.)

4

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Thus, the Court must first determine which state's law would apply in the absence of the choice of law provision in the agreement by considering the factors of Article 3537. In this case, the Article 3537 factors strongly support the Plunks' argument. The Plunks are both domiciled in Louisiana. The Plunks executed the Agreement in Louisiana. The subject of the Agreement was the acquisition of three businesses: two Louisiana entities and one Mississippi entity. Other than the fact that Illinois is the headquarters of LKQ, Illinois had marginal contact with the asset purchase and the subsequent employment dispute at issue in this case.

In addition, the Court finds that application of Illinois law would significantly impair the policies of Louisiana in protecting its employees from restrictions on the common right to work. Louisiana's statutory and jurisprudential law expresses a strong public policy against restrictions on the Plunks right to work in Louisiana. *See SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000–1695 (La.6/29/01), 808 So.2d 294, 298. Although Illinois has an interest in promoting freedom of contracting which may be arguably impaired by the application of Louisiana law, this impairment is insignificant under the required analysis.

The strong public policy to protect employees from restrictive covenants on the employees' right to work is evidenced by Louisiana Revised Statute § 23:921. This statute precludes employers and employees from choosing the state law that will apply to employment agreements, providing:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

LKQ argues that Section 23:921 does not apply to the Agreement because "this matter does not implicate rights under an employment relationship." [Doc. 24]. This argument fails on multiple levels, including under a common sense analysis. LKQ attempts to use the Agreement, a document in excess of twenty pages, as a clever veil to shroud the employment relationship clearly embedded within the lengthy contract. Put another way, the Asset Purchase Agreement is so intertwined with the Plunks' employment that it is virtually impossible to separate the two. Louisiana courts have consistently held that Section 23:921 is triggered when a contract includes employment provisions. In *Millet v. Loyd Crump*, 96-639 (La. App. 5 Cir. 12/30/96), 687 So. 2d 132, the Louisiana Fifth Circuit Court of Appeal examined a non-compete ancillary to the sale of an insurance agency accomplished through a "purchase and sale agreement." Despite the fact that the non-compete agreement was within the purchase contract, the court applied Section 23:921 and held that the contract was null and unenforceable. The Louisiana Second Circuit Court of Appeal has also determined that Section 23:921 applies even when there is not a pure employer-employee relationship. *See Boswell v. Iem*, 37,713 (La. App. 2 Cir. 10/31/03), 859 So. 2d 944.

To reiterate: the Agreement undoubtedly implicates rights under an employment relationship. Section 10.1 of the Restrictive Covenants specifically states that the parties "shall not, directly or indirectly, either for himself or itself or for any other person, for a period of five years...engage in,

represent, furnish consulting services to, *be employed by* or have any interest in..." [Doc. 1, Exh. A] (emphasis added). The restrictive covenants at issue in this case are incredibly broad and preclude the Plunks from working in any capacity in the industry for five years. LKQ concedes that "the covenant prohibits the Plunks from competing nationwide. As shown by the Plunks advertising, the geographical good will of Plunks extended nationwide and is being pushed into new areas every day." [Doc. 24-1]. Furthermore, the Agreement required LKQ to hire the Plunks on an at-will basis following the closing. Section 10.7 is entitled "Employment" and set a yearly salary for Mr. Plunk, Sr. and Mr. Plunk, Jr. at $50,000.00 and $100,000.00 plus bonuses, respectively. [Doc. 1, Exh. A at ¶ 10.7]. Ultimately, these facts acutely and unquestionably evince an employment relationship sufficient to trigger Section 23:921.

This Court next notes that covenants must be strictly construed against the party seeking its enforcement. *See SWAT 24*, 808 So.2d at 298. The Fifth Circuit has recognized that Louisiana has a strong public policy restricting non-competition agreements and similar types of restrictive covenants and narrowly construes such agreements. *See Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384, 387 (5th Cir. 2009). Likewise, Louisiana's approach to non-competition agreements "requires mechanical adherence to the requirements listed in the law (especially the geographical and time limitations)." *L & B Transp., LLC v. Beech*, 568 F. Supp. 2d 689, 693 (M.D. La. 2008). LKQ's argument simply fails under these critical standards.

Because of the strong public policy expressed by the Louisiana legislature, by the Louisiana Supreme Court, and by the other state and federal courts interpreting this law, the choice of law statement in the Agreement contravenes the public policy of Louisiana. *See Lobrano v. C. H. Robinson Worldwide Inc.*, 10-CV-1775, 2011 WL 52602 (W.D. La. Jan. 7, 2011). For these reasons,

Louisiana law applies to the interpretation of this contract. Accordingly, there is no need to discuss whether the provision would survive under Illinois law.

### 3. Do the Restrictive Covenants Comply With Louisiana State Law?

Because Louisiana law applies, this Court must determine whether the five year period specified in the restrictive covenants provision complies with the strict requirements of Louisiana Revised Statute § 23:921(B), which provides as follows:

> Any person ... who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, *not to exceed a period of two years from the date of sale*. (Emphasis added).

In sum, the statute requires that restrictive covenants cannot extend beyond two years from the date of sale. The date of sale was June 1, 2010. As such, the Plunks were no longer bound by the restrictive covenant after June 1, 2012. Ultimately the restrictive covenants are no longer enforceable.

### 4. Can the Agreement Be Reformed To Comply With Louisiana Law?

The next issue before this Court is whether reformation is possible or the Agreement is null and void in its entirety. The Agreement contains a "Savings Clause" set forth in paragraph 10.1.2 which states that if any provision is held to be invalid or unenforceable, it "shall in no way affect any other provision or any other part of this Agreement..." [Doc. 1, Exh. 2]. In some limited instances, Louisiana courts have applied severability clauses to enforce otherwise invalid non-competition agreements. Most notably, the Louisiana Supreme Court in *SWAT 24* reaffirmed its prior enforcement of a severability clause which "did not require a court to reform, redraft, or create a new

8

agreement," but rather "required only that the offending portion of the agreement be severed." *SWAT 24*, 808 So.2d at 308-09. Ultimately the court found that "[t]he language of the Agreement makes it possible to excise the offending language from the noncompetition clause without doing undue damage to the remainder of the provision." *Id*.

As noted earlier, the Agreement is incredibly broad both geographically and temporally. As such, this Court refuses to reform the Agreement here. This Court also notes that LKQ argues that reformation is feasible but makes no effort to explain how a modification is possible under existing law. [Doc. 29]. Ultimately, because the non-compete restrictive covenants do not comply with the strict requirements of Louisiana Revised Statute § 23:921, reformation of the contract is not possible.

## CONCLUSION

For the reasons assigned herein, the motion for summary judgment filed by LKQ [Doc. 24] is hereby **DENIED**. The motion for summary judgment filed by the Plunks [Doc. 25] is **GRANTED**.

**THUS DONE AND SIGNED**, this 31st day of October, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE